UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------x
DAVID I. YOUNG,
                                         :
                 Plaintiff,                          **DECISION AND ORDER**
                                         :
              -against-                           09-CV-7475 (CS)
                                         :
DAUGHTERS OF JACOB NURSING
HOME,                                          :
               Defendant.           :
------------------------------------------------------x

Appearances:

Ricki E. Roer, Esq.
Nancy V. Wright, Esq.
Wilson, Elser, Moskowitz, Edelman & Dicker, LLP
New York, New York
*Counsel for Defendant*

Kenneth W. Richardson, Esq.
New York, New York
*Counsel for Plaintiff*

Seibel, J.

      Before the Court is Defendant's Motion for Summary Judgment.  (Doc. 15.)  For the reasons stated below, the motion is granted.

**I.    Background**

      The following facts are undisputed except where noted.[1]  Plaintiff was hired by Defendant as a respiratory therapist on June 16, 2003, when he was 70 years old.  (D's 56.1 ¶ 3.)

---

[1]      Defendant, as required by Fed. R. Civ. P. 56(c) and Local Rule 56.1(d), filed a Statement Pursuant to Local Rule 56.1, (Doc. 16) ("D's 56.1"), and set forth therein the particular materials in the record on which it relied for each entry.  Plaintiff in his Statement in Opposition to Defendant's Statement Pursuant to Rule 56.1, (Doc. 19) ("P's Opp. 56.1"), simply stated that he denied several of the entries in Defendant's Statement.  He has thus failed to comply with Fed.

His duties included caring for and treatment of ventilator-dependent patients.  (*Id.* ¶¶ 5–7.)  Although hired part-time, he worked at least 75 hours every two weeks, and was given salary increases during his tenure.  (*Id.* ¶ 4.)  Plaintiff is a Taiwanese male who was approximately 75 years old at the time of his termination on July 22, 2008.  (Affidavit of Plaintiff David Young (Doc. 18, Ex. 1) ("Young Aff.") ¶ 6.)  In 2008 Defendant's staff of 528 consisted of approximately 144 Hispanic employees, 19 white employees, 315 African-American employees and 50 Asian employees.  (D's 56.1 ¶ 29.)

On July 22, 2008, Plaintiff was terminated for failing to provide adequate and timely care to a ventilator-dependent patient in distress and for inappropriate verbal interactions with that patient on July 19, 2008.  (*Id.* ¶ 8.)  The termination followed an internal investigation of the July 19, 2008 incident.  (*Id.* ¶ 9.)  The patient in question reported to Defendant's personnel that some time before July 19, 2008, Plaintiff had turned down the patient's ventilator setting, which caused the patient discomfort.  (*Id.* ¶ 10.)  When the patient asked Plaintiff why he had adjusted the ventilator, Plaintiff—according to the patient—waved him off and said to keep eating.  (*Id.*)

---

R. Civ. P. 56(c) and Local Rule 56.1(d), which require him to support his denials by reference to specific evidence in the record.  I may accordingly treat the entries in the Defendant's Statement as admitted.  *See* Fed. R. Civ. P. 56(e); Local Rule 56.1(c).  I have nevertheless endeavored to discern from the remainder of Plaintiff's submissions what facts he wishes, and is in a position, to controvert.  Plaintiff has also submitted a Statement of Facts Pursuant to Rule 56.1, (Doc. 19) ("P's 56.1"), even though he is not moving for summary judgment.  It is supported largely by an affidavit of Plaintiff and by exhibits that, according to Defendant, were never produced in discovery, are unauthenticated, and appear to have been handwritten, in whole or in small part, by Plaintiff.  It is well settled that an affidavit submitted in connection with a summary judgment motion may be disregarded to the extent it contradicts the party's deposition.  *See Mack v. United States*, 814 F.2d 120, 124–25 (2d Cir. 1987); *Daley v. McNeil Consumer Prods. Co.*, 164 F. Supp. 2d 367, 376 (S.D.N.Y. 2001).  It is also settled that exhibits submitted in connection with a summary judgment motion must be authenticated and non-hearsay in order to be considered.  *See Major League Baseball Props., Inc. v. Salvino, Inc.*, 542 F.3d 290, 310 (2d Cir. 2008).  It is also settled that if a party fails to produce a document in discovery, he may be precluded from relying on it in connection with a summary judgment motion or at trial.  *See* Fed. R. Civ. P. 37(c)(1); *Design Strategy, Inc. v. Davis*, 469 F.3d 284, 296–97 (2d Cir. 2006); *Ebewo v. Martinez*, 309 F. Supp. 2d 600, 607–08 (S.D.N.Y. 2004).

The patient then pushed Plaintiff's hand away from the ventilator and told Plaintiff to get away. (*Id.* ¶ 11.) On July 19, 2008, the patient requested of a nurse that someone suction him because his chest felt tight. (*Id.* ¶ 13.) The patient heard the nurses make that request of Plaintiff several times, but Plaintiff refused to respond—a fact confirmed by the nurses on duty, who reported requesting Plaintiff to care for the patient several times, a request with which he complied only when they threatened to report him to the nurse in charge. (*Id.* ¶¶ 13–14.) Plaintiff does not specifically deny refusing to respond, although he says he did not want to tend to the patient, was afraid to do so, and asked two nurses to accompany him. (Young Aff. ¶¶ 13–14.) According to the charge nurse, the patient was bedridden and incapable of causing physical harm to Plaintiff. (Declaration of Maryse Barthelemy (Doc. 16, Ex. J) ("Barthelemy Decl.") ¶ 16.)

The patient reported that after Plaintiff finally entered his room, he stood in front of the patient and berated him, saying, "[s]o you need me now," or "[s]o now you need me." (D's 56.1 ¶ 16.) According to the nurses, Plaintiff refused to treat the patient until he apologized, (*id.* ¶ 18), which Plaintiff denies, (Young Aff. ¶¶ 9–10). The patient, who reported fearing for his life, repeatedly apologized for the earlier incident in which he had pushed away Plaintiff's hand. (D's 56.1 ¶¶ 17–18.) Plaintiff then suctioned the patient quickly, two or three times, and only pushed the catheter halfway down the patient's throat, leaving him in continued discomfort. (*Id.* ¶ 19.) The patient reported his continued discomfort to a nurse, who then tended to the patient, finding he had a mucus plug, which can lead to serious problems and which should not be found after proper suctioning. (*Id.* ¶ 20.) The patient stated that he did not want to be cared for by, or be anywhere near, Plaintiff in the future, and that Plaintiff "should be on the killer's list because he is rough." (Declaration of Gary Lipperman (Doc. 16, Ex. I) ¶ 11.)

The charge nurse questioned Plaintiff about the improper suctioning, and Plaintiff became very angry, shaking the nurse by the shoulders and claiming that the patient had done the same thing to him several weeks prior, on June 28, 2008. Plaintiff claimed that the patient jumped from the bed, pushed and strangled Plaintiff, and threw Plaintiff out of the room, which the patient denied and which, according to the nurse, would have been impossible given the patient's condition. Plaintiff's verbal report of this incident on June 19, 2008 was the first the charge nurse had heard of it. (Barthelemy Decl. ¶¶ 12–19.)

The Director of Nursing questioned Plaintiff on July 22, 2008, and Plaintiff denied that anything unusual had occurred the previous weekend. (D's 56.1 ¶ 21.) The Director of Nursing decided to terminate Plaintiff based on the incident, (*id.* ¶ 22), which was one of a series of patient complaints Plaintiff had received, (*id.* ¶¶ 23–24). Plaintiff had been suspended for 30 days in 2004 for walking off the job without adequate coverage and for inappropriate interactions with several patients, as reported by their family members. (*Id.* ¶ 24.) In March 2005, a patient's family member complained about Plaintiff's rough treatment of the patient during suctioning and Plaintiff's use of the wrong catheter. (*Id.*) The following month, two patients were removed from his care following complaints about his suctioning and his attitude. (*Id.*) The month after that, another patient was removed from Plaintiff's care after the patient began vomiting during suctioning and Plaintiff left a nurse to clean up without attempting to find out why the patient was vomiting. (*Id.*)

In January 2005, Plaintiff filed a complaint against Defendant with the New York State Division of Human Rights ("DHR"), challenging as discriminatory the two 30-day suspensions from 2004, among other things. (*Id.* ¶ 41 n.1.) The DHR dismissed the case on the merits, after

4

which Plaintiff sued Defendant in this Court in 2005, claiming discrimination based on age, race, and national origin. That case was settled in 2007. (*Id.*)

Plaintiff asserts that he was told by the charge nurse that the Chief Executive Officer ("CEO") of Defendant once said that he wanted to lay off older workers who should be retired already, (Young Aff. ¶ 30), but admits that he is not aware of the Director of Nursing, who made the decision to terminate Plaintiff, making any derogatory comments, (D's 56.1 ¶ 33). The charge nurse denies having reported any such thing to Plaintiff. (Barthelemy Decl. ¶ 21.)

The first report Plaintiff made of the patient's alleged June 28, 2008 attack on him was made to the charge nurse verbally on July 19, 2008, when she questioned him about his alleged refusal to care for the patient on that date. (D's 56.1 ¶ 37.) Plaintiff's first written report of the alleged June 28, 2008 attack was on a form dated July 22, 2008 (the date of his termination), and he testified that he provided this form to Defendant on July 23 or 24, 2008. (*Id.* ¶ 35.) Records from Plaintiff's doctor show that at a visit on July 21, 2008—the day before his termination—Plaintiff told his doctor that he had been injured three months earlier while doing exercises at his home, and mentioned nothing about an attack by a patient. (*Id.* ¶ 38.) The medical records also contain an entry dated August 20, 2008, which reads, "Addendum: On 8/13/08 [patient] is now reporting pain originated from accident on 6/28/08." (*Id.* ¶ 39.)

On March 23, 2009, Plaintiff filed a charge with the United States Equal Employment Opportunity Commission ("EEOC"), alleging discrimination by Defendant on the basis of race, age, color, national origin, and sex, as well as retaliation. The EEOC dismissed the charge on June 1, 2009, (*id.* ¶ 41), after which Plaintiff filed the instant action on August 26, 2009, (*id.* ¶ 42). His Amended Complaint advances claims under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e *et seq.*, that his termination was the result of discrimination

5

based on gender, race, national origin, age and color. He also advances a Title VII claim alleging retaliation based on his prior civil action, as well as claims under the New York State Human Rights Law ("HRL"), N.Y. Exec. Law § 296, and the New York City Administrative Code ("NYCAC"), 8 N.Y.C.A.C. § 502, that parallel his five federal claims.

**II.    Discussion**

    A.    Applicable Legal Standards

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[T]he dispute about a material fact is 'genuine' . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" if it "might affect the outcome of the suit under the governing law . . . . Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* On a motion for summary judgment, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. The movant bears the initial burden of demonstrating the absence of a genuine issue of material fact, and, if satisfied, the burden then shifts to the non-movant to present evidence sufficient to satisfy every element of the claim. *Holcomb v. Iona Coll.*, 521 F.3d 130, 137 (2d Cir. 2008) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986)). "The mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson*, 477 U.S. at 252. Moreover, the non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986),

and he "may not rely on conclusory allegations or unsubstantiated speculation," *Fujitsu Ltd. v. Fed. Express Corp.*, 247 F.3d 423, 428 (2d Cir. 2001) (internal quotation marks omitted).

"A party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials . . . ." Fed. R. Civ. P. 56(c)(1)(A). Where an affidavit is used to support or oppose the motion, it "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant . . . is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4); *see Major League Baseball*, 542 F.3d at 310. In the event a party "fails to properly address another party's assertion of fact as required by Rule 56(c), the court may," among other things, "consider the fact undisputed for purposes of the motion" or "grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it." Fed. R. Civ. P. 56(e)(2), (3).

"Though caution must be exercised in granting summary judgment where intent is genuinely in issue, summary judgment remains available to reject discrimination claims in cases lacking genuine issues of material fact." *Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 29, 40 (2d Cir. 1994) (internal citations omitted); *see Abdu-Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 466 (2d Cir. 2001) ("[S]ummary judgment may be appropriate even in the fact-intensive context of discrimination cases. . . . [T]he salutary purposes of summary judgment—avoiding protracted, expensive and harassing trials—apply no less to discrimination cases than to . . . other areas of litigation.") (fourth alteration in original) (internal quotation marks omitted).

B.   Analysis

1.   **Discrimination Claims**

Plaintiff's federal discrimination claims are based on gender, race, national origin, age and color.  Gender, race, national origin, and color claims are cognizable under Title VII, but age claims are not.  *See* 42 U.S.C. § 2000e-2 (prohibits discrimination based on "race, color, religion, sex, or national origin"); *Pocino v. Culkin*, No. 09-3447, 2010 WL 3516219, at *2 (E.D.N.Y. Aug. 31, 2010) ("Title VII does not prohibit discrimination on the basis of age").  The Court will assume that Plaintiff intended to advance his age claim under the Age Discrimination in Employment Act ("ADEA"), 42 U.S.C. § 621, *et seq*.

Plaintiff's claims are governed by the burden-shifting framework established by *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 807 (1973), and its progeny.[2]  A plaintiff bears the initial burden of establishing a *prima facie* case of discrimination.  *Weinstock v. Columbia Univ.*, 224 F.3d 33, 42 (2d Cir. 2000).  At the *prima facie* stage, the burden of proof is minimal.  *See id*.  Once a *prima facie* case is established, a rebuttable presumption of discrimination arises and the burden of production shifts to the defendant.  *See Carlton v. Mystic Transp. Inc.*, 202 F.3d 129, 134 (2d Cir. 2000).  "[T]he defendant must clearly set forth, through the introduction of admissible evidence, reasons for its actions which, *if believed by the trier of fact*, would support a finding that unlawful discrimination was not the cause of the employment action."  *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 507 (1993) (emphasis and alteration in

---

[2]   This framework applies to Title VII, ADEA, HRL and NYCAC claims.  *See*, *e.g.*, *Dixon v. Int'l Fed'n of Accountants*, No. 10-1924, 2011 WL 1086867, at *1 (2d Cir. Mar. 25, 2011) (applying framework to Title VII, ADEA, HRL and NYCAC claims); *see also Gorzynski v. Jetblue Airways Corp.*, 596 F.3d 93, 106 (2d Cir. 2010) (notwithstanding Supreme Court's decision in *Gross v. FBL Fin. Servs. Inc.*, 129 S. Ct. 2343 (2009), this Circuit has continued to apply *McDonnell Douglas* burden-shifting framework to ADEA claims); *Mattera v. JPMorgan Chase Corp.*, 740 F. Supp. 2d 561, 570–71 (S.D.N.Y. 2010) (applying *McDonnell Douglas* burden-shifting framework to ADEA claims after *Gross*).

original) (internal quotation marks omitted).  Once the defendant proffers such a legitimate, non-discriminatory reason for the challenged employment action, the presumption drops away, and the plaintiff must prove that the reason offered by the defendant was not its true reason but rather a pretext for unlawful discrimination.  *See Roge v. NYP Holdings, Inc.*, 257 F.3d 164, 168 (2d Cir. 2001); *Slattery v. Swiss Reins. Am. Corp.*, 248 F.3d 87, 93 (2d Cir. 2001).  The plaintiff must produce "sufficient evidence to support a rational finding that the legitimate, non-discriminatory reasons proffered by the defendant were false, and that more likely than not discrimination was the real reason for the employment action." *Weinstock*, 224 F.3d at 42 (internal quotation marks and alterations omitted).  "In short, the question becomes whether the evidence, taken as a whole, supports a sufficient rational inference of discrimination." *Id*.  The ultimate burden of persuasion remains with the plaintiff to show that the defendant intentionally discriminated. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000).

Under the ADEA, the final stage is different.  The plaintiff must show not only that the defendant discriminated on the basis of age, but also that age discrimination was a "but-for" cause of the adverse action, and not merely one of the motivating factors.  *Gross*, 129 S. Ct. 2343; *see Gorzynski*, 596 F.3d at 106.

To make out a *prima facie* case of discrimination, a plaintiff must show:  (1) he is a member of a protected class; (2) he is qualified to perform the job in question; (3) he was discharged; and (4) circumstances giving rise to an inference of discrimination based on membership in the protected class.  *See Slattery*, 248 F.3d at 91; *Graham v. Long Island R.R.*, 230 F.3d 34, 38 (2d Cir. 2000); *Mattera*, 740 F. Supp. 2d at 571.  Defendant here challenges the fourth requirement, arguing that Plaintiff has not made out a *prima facie* case because he has offered no evidence, direct or circumstantial, suggesting that anyone associated with the decision

to terminate Plaintiff harbored discriminatory animus.  Defendant is correct.  Plaintiff points to only two factors as supporting his *prima facie* case, and they are insufficient, either singly or in combination.

First, Plaintiff claims that Defendant's CEO said he wanted to terminate older workers.  If true, this would support an inference only of age discrimination, not discrimination on the other bases advanced by Plaintiff.  In any event, the alleged comment must be disregarded because Plaintiff has provided no admissible proof that it was made.  It is well settled that the evidence considered in connection with a summary judgment motion must be admissible in evidence at trial.  *See* Fed. R. Civ. P. 56(e); *Major League Baseball*, 542 F.3d at 310; *Raskin v. Wyatt Co.*, 125 F.3d 55, 66 (2d Cir. 1997).  Plaintiff here offers only hearsay:  that the charge nurse told him about the CEO's comment.  While the CEO-to-charge-nurse leg of the double hearsay might be admissible as an admission, *see* Fed. R. Evid. 801(d)(2), the charge-nurse-to-Plaintiff leg strikes the Court as pure hearsay.  Plaintiff has not advanced any exception that might justify its admission.  Accordingly, there is no evidence that the statement was made that I can consider.

Even if there were such evidence, such isolated or "stray" remarks are insufficient to support an inference that a particular personnel decision was discriminatory, especially when the context provides no connection to the decision at issue and the speaker is not shown to have been involved in the decision.  *See Dixon*, 2011 WL 1086867, at *1 (isolated derogatory remark by one who played no role in plaintiff's termination does not give rise to inference of discrimination); *Levine v. Baras Jersey, Inc.*, No. 97-0225, 2000 WL 64868, at *2 (S.D.N.Y. Jan. 25, 2000) (single comment about needing "a younger salesperson" insufficient to create inference of age discrimination).  Here Plaintiff provides no information regarding when or in

10

what context the CEO made the alleged remark, or when or in what context the charge nurse repeated it to Plaintiff, nor has he provided evidence suggesting that the decision to fire him was made by the CEO, as opposed to the Director of Nursing.  Accordingly, the remark would be insufficient to support an inference of discrimination even if there were admissible evidence that it had been made.

The other way Plaintiff attempts to raise an inference of discrimination is by alleging that other similarly situated employees were treated more favorably.  The evidence on which he relies must be disregarded to the extent he did not provide it in discovery, but even if I were to consider it all, Plaintiff's proffer fails.  It seems from his affidavit that at least some of the events on which he relies were not reported to Defendant.  (*See* Young Aff. ¶¶ 27–29.)  In any event, to support an inference of discrimination, Plaintiff must point to comparators whose situations have a high degree of similarity to his own.  *See Berube v. Great Atl. & Pac. Tea Co.*, 348 F. App'x 684, 685 (2d Cir. 2009) (comparator "must be similarly situated in all material respects"); *McGuinness v. Lincoln Hall*, 263 F.3d 49, 53–54 (2d Cir. 2001) (same).  Here, Plaintiff has provided no evidence suggesting that the individuals who he says were treated more favorably had a history of discipline at all similar to his.  *Gelin v. Geithner*, No. 06-10176, 2009 WL 804144, at *18 (S.D.N.Y. Mar. 26, 2009) (comparators not similarly situated where plaintiff "produced no evidence to show that [comparators] were similarly situated to [plaintiff] in terms of the quality of their performance, their disciplinary records, or other material factors . . . ."); *O'Neal v. State Univ. of N.Y.*, No. 01-7802, 2006 WL 3246935, at *11 (E.D.N.Y. Nov. 8, 2006) (bare allegation that employer "subjected female employees to greater scrutiny" insufficient where plaintiff failed to address whether comparators "have similar qualifications, display similar disciplinary records or committed similar insubordinate acts").  *But see Berube*, 348 F.

11

App'x at 685–87 (comparators with same position who were cited for violating the same workplace rules around same time as plaintiff were sufficiently "similar"). Accordingly, the comparators are not sufficiently similar to raise an inference of discrimination.

All that Plaintiff has here is a conclusion: he is Taiwanese and over 70; he was treated unfairly; and therefore he must have been treated unfairly because he is Taiwanese and over 70. But such conclusory statements are insufficient to meet even the minimal burden of making out a *prima facie* case. *See Woodman v. WWOR-TV, Inc.*, 293 F. Supp. 2d 381, 387 (S.D.N.Y. 2003) ("Conclusory statements . . . are insufficient to defeat a motion for summary judgment."). There is simply nothing connecting Plaintiff's membership in any protected class to his termination.

Any such inference here would be particularly unjustified in light of undisputed facts that tend to negate any inference of discrimination. First, Plaintiff was 70 years of age and Taiwanese when Defendant hired him, so it hardly follows that those factors would lead to his termination five years thereafter. *See Levine*, 2000 WL 64868, at *2 (fact that employer hired plaintiff "when he was already 58 years old . . . undercuts any inference of age discrimination"); *Suttell v. Mfrs. Hanover Trust Co.*, 793 F. Supp. 70, 74 (S.D.N.Y. 1992) (plaintiff "was hired by the [defendant] at the age of fifty-six, a fact which undercuts any inference of age discrimination"). Second, Defendant's diverse workforce also undermines the suggestion that discrimination was at work. *See Gray v. AES Greenidge, LLC*, 100 F. App'x 844, 846 (2d Cir. 2004) (fact that half of new hires were over forty during relevant time period counseled against finding age discrimination). *But see Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 29, 38–39 (2d Cir. 1994) (diverse workforce alone not sufficient to negate inference of discrimination where other evidence supported inference).

Even if Plaintiff had made out a *prima facie* case of discrimination, Defendant has met its burden of proffering a legitimate non-discriminatory reason for Plaintiff's termination. It alleges that it terminated Plaintiff not based on his age or origin, but rather on his having mistreated a patient, both in his verbal interactions and by substandard suctioning. Such conduct is a legitimate, non-discriminatory basis for termination. *See Baldwin v. N. Shore Univ. Hosp.*, 470 F. Supp. 2d 225, 230–32 (E.D.N.Y. 2007) (multiple complaints about nurse's performance and patient care provided legitimate non-discriminatory basis for termination); *Yarde v. Good Samaritan Hosp.*, 360 F. Supp. 2d 552, 561 (S.D.N.Y. 2005) (nurse's breach of patient confidentiality deemed legitimate non-discriminatory basis for termination); *Reich v. N.Y. Hosp.*, 513 F. Supp. 854, 860–61 (S.D.N.Y. 1981) (complaints about nurse's treatment of patients and performance was "overwhelming evidence" of legitimate non-discriminatory basis for termination).

The question accordingly arises as to whether Plaintiff has produced evidence suggesting that this reason was false—in other words, that in terminating Plaintiff, Defendant did not genuinely believe that Plaintiff had engaged in misconduct, but rather acted based on racism or ageism. The record reveals no such evidence.

Whether or not the patient's accusations against Plaintiff were true, there is no dispute that Defendant was *told*, by multiple sources, that Plaintiff had acted inappropriately. Thus the issue of fact he creates by denying having done anything improper with respect to the patient is not a genuine issue of *material* fact because it would not affect the outcome. Defendant was *told*—and reasonably believed, after investigation—that Plaintiff had acted inappropriately. Even by Plaintiff's account, he denied to his employer that something unusual had occurred on July 19, 2008, when in fact something unusual had occurred. In these circumstances, it simply

13

cannot be said that Defendant's acting on the corroborated reports of Plaintiff's misconduct, in light of his prior history of discipline, was pretextual.  Indeed, in light of the extensive record of prior discipline of Plaintiff, which Plaintiff has not controverted, "even if the facts are in dispute about the inappropriateness of [the June 19, 2008] incident[], []he cannot demonstrate that defendant['s] proffered reason[] for h[is] termination w[as] so unfounded that a reasonable jury could conclude that they were not the defendant['s] true reasons, but rather a pretext." *Fleming v. MaxMara USA, Inc.*, 371 F. App'x 115, 117–18 (2d Cir. 2010) (internal quotation marks omitted); *see Blanc v. Sagem Morpho, Inc.*, No. 07-3085, 2009 WL 1813236, at *16 (E.D.N.Y. June 25, 2009) (plaintiff failed to show pretext where, among other things, "Plaintiff acknowledged numerous incidents of unsatisfactory job performance"), *aff'd*, 394 F. App'x 808 (2d Cir. 2010).  Accordingly, for this reason and the reasons set forth above in connection with Plaintiff's failure to set forth a *prima facie* case, Plaintiff has not supplied facts sufficient to warrant a reasonable jury finding by a preponderance of the evidence that "the legitimate reasons offered by the defendant were not [the] true reasons, but were a pretext for discrimination." *Richardson v. Comm'n on Human Rights & Opportunities*, 532 F.3d 114, 125 n.11 (2d Cir. 2008) (internal quotation marks omitted).

It is well settled that courts in discrimination cases should not serve as "super-personnel departments," reviewing employer disciplinary decisions.  *See Ghent v. Moore*, 324 F. App'x 55, 57 (2d Cir. 2009); *Byrnie v. Town of Cromwell Bd. of Educ.*, 243 F.3d 93, 103 (2d Cir. 2001). "Only where an employer's business decision is so implausible as to call into question its genuineness should [a] court conclude that a reasonable trier of fact could find that it is pretextual." *Fleming*, 371 F. App'x at 118.

### 2. Retaliation

Plaintiff argues that his termination in July 2008 was in retaliation for the lawsuit that he filed against Defendant in January 2005 and which was settled in March 2007.  (*See* No. 05-8018 (S.D.N.Y.), Docs. 13–15.)  Title VII makes it unlawful for an employer to discriminate against an employee "because he [or she] has opposed any practice made an unlawful employment practice by this subchapter, or because he [or she] has made a charge . . . in an investigation, proceeding, or hearing under this subchapter."  42 U.S.C. § 2000e-3(a).  To establish a *prima facie* case of retaliation, Plaintiff must show that:  (1) he participated in a protected activity; (2) he suffered an adverse employment action; and (3) a causal connection exists between the protected activity and the adverse employment action.  *Gorzynski*, 596 F.3d at 110.  Plaintiff has produced no evidence of any connection between his dismissal and the prior lawsuit.  "To the extent [he] relies on the temporal proximity between these two events as circumstantial evidence of causation, that, standing alone, is insufficient."  *Dixon*, 2011 WL 1086867, at *2.  More than three years elapsed between Plaintiff's lawsuit and his termination, and sixteen months elapsed between the settlement and his termination.  These time frames are far too long to support an inference of discrimination.  *See, e.g., id.* (four months insufficient to show causal connection for purposes of *prima facie* case); *McCormick v. Donovan*, 365 F. App'x 247, 249 (2d Cir. 2010) (year-and-a-half delay between complaint and discipline insufficient to make out *prima facie* case); *Woodworth v. Shinseki*, No. 10-6630, 2011 WL 2174347, at *3 (W.D.N.Y. June 2, 2011) (fifteen-month span insufficient to plausibly allege causal connection); *see also Clark Cnty. Sch. Dist.,* 532 U.S. at 273 ("The cases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of

15

causality to establish a prima facie case uniformly hold that the temporal proximity must be very close.") (internal quotation marks omitted).

As with Plaintiff's discrimination claim, for which the record is devoid of evidence that Plaintiff's termination was connected to his membership in a protected class, the record is simply devoid of evidence suggesting that Plaintiff's termination was causally connected to protected activity. Moreover, even if Plaintiff had alleged a sufficient connection to establish a *prima facie* case, he has as discussed above, offered no evidence to suggest that Defendant's stated reasons for Plaintiff's termination were a pretext for retaliation. Even where the temporal proximity of events may give rise to an inference of retaliation for the purposes of establishing a *prima facie* case of retaliation under Title VII, "without more, such temporal proximity is insufficient to satisfy [Plaintiff's] burden to bring forward some evidence of pretext." *El Sayed v. Hilton Hotels Corp.*, 627 F.3d 931, 933 (2d Cir. 2010). Plaintiff has supplied no evidence of pretext, and accordingly his retaliation claim fails.[3]

---

[3] I recognize that retaliation claims under the NYCAC are evaluated less strictly than their federal counterparts, *see Fincher v. Depository Trust & Clearing Corp.*, 604 F.3d 712, 723 (2d Cir. 2010), but plaintiffs must still, under the NYCAC, show a causal connection between the protected activity and the adverse action, which Plaintiff here has not done, *see Dixon*, 2011 WL 1086867 at 2 n.1.

### III. Conclusion

Considering the evidence in the light most favorable to Plaintiff, he has not provided facts sufficient for a finder of fact to find a *prima facie* case of discrimination or retaliation, or for a finder of fact to conclude that Defendant's stated reasons for his termination were a pretext for discrimination or retaliation. Accordingly, Defendant's Motion for Summary Judgment is GRANTED. The Clerk is respectfully directed to terminate the pending motion, (Doc. 15), enter judgment in favor of Defendant, and close the case.

**SO ORDERED.**

Dated: White Plains, New York
       July 12, 2011

                                               _____
                                               CATHY SEIBEL, U.S.D.J.